Our fifth case for this morning is Gloria Jean Sykes v. Cook County Circuit Court Probate Division and others. Mr. Varchetto. Good morning, Your Honor. Good morning. I'm Richard Varchetto on behalf of the appellant. This morning, the marshal's office allowed my client the reasonable accommodation of allowing her service dog to enter this building. And so far today, it seems, the Seventh Circuit is going to allow my client that same simple reasonable accommodation. But I wonder if it would be appropriate for this court, after the marshal's office had granted that accommodation, to inquire as to whether or not she had a disability or if this was a service dog, as long as the dog wasn't disruptive. Well, let me cut you off here because there are a couple of things about this case that I think we need to discuss. One of them is that this is not, as I understand it, just a straightforward Tennessee v. Lane case about potential litigants' access to a state courthouse. That's what Tennessee v. Lane is about. It's an ADA case. It's about a litigant's access to a courthouse. It's a different disability, but the same fundamental statute. What this is, is your request to us to intervene in the way a particular state court judge is handling her courtroom. And implicit in your request is the notion that there's no appeal available within the state court system if she has gone beyond the boundaries that are permitted by both the federal law and the state law that apply to every court in this country, including the Circuit Court of Cook County. And I think you have a hard job to convince me that the federal courts have the job of Let's assume your client has a legitimate need for the service dog. Somebody else might not. And so to say that a judge can't even ask is a very strong statement. First of all, Judge, I think I disagree with your initial premise. So you're not bringing a Tennessee v. Lane case? I am asking, you have to understand that the first time that my client was barred from the court, after the first time she was barred, she came to the court, she filed this case. And then she returned to the court and the judge again asked her to leave. What we're saying is that my client- And she filed no appeal in the state court system. But we're not trying to overturn any order of the state court in any way. But you are, actually. You're trying to say, let's take a simple case. Suppose a state court judge, I don't know why they would do this, but suppose a state court judge decides they're just going to bar a litigant from a courtroom. Maybe they're afraid the person's going to be disruptive. We have this with prisoner cases occasionally. Well, if that is an incorrect order, if there is no sufficient factual basis for the order barring a litigant from a courtroom, then you take an appeal to the Illinois Appellate Court and they're going to say, no, there's a right to be there in the courtroom, whether it's a civil case or not. Well, this is a somewhat, maybe it's comparable because she needs the dog with her, or maybe somebody else needs wheelchair access, or somebody else needs a signer so that they can follow what's going on in the courtroom. I don't see why the federal court is the right place to go to solve this problem. My client needs access on a daily basis to the state court. It really doesn't matter why she has to be there. But she is a journalist and she is an investigative reporter and it is part of her job to be in those courtrooms. And they have the same open court policy that any court in the United States should have. But you're not answering why, for example, the district court threw out a couple of theories. The district court says there's a Rooker-Feldman problem. The district court also says, and if it's not that, younger abstention would counsel, especially actually under a case like Giudice against Vail, which dealt with civil contempt, but also internal management of the state court proceedings. The district court says, I don't have any business here. He's very clear. The only thing he's dismissing with prejudice is the federal court side of this. He says it's without prejudice to pursuit in the state courts any way you want to pursue it. So I don't understand. I think that the logic of the district court should have gone like this. It should have first answered the question whether there's subject matter jurisdiction, and then should have reached the question of whether any of those doctrines deny my client's claims. Well, he thinks Rooker-Feldman does deprive him of subject matter jurisdiction. But the district judge himself, in his ruling, said why there is subject matter jurisdiction in the federal court. It's page 6, paragraph 1. And I'm somewhat paraphrasing, and I apologize for what I might call license. The court has jurisdiction here to the extent that Sykes has asserted claims in which she has personally suffered an injury, in fact. In order to survive a motion to dismiss, the complaint must allege that Sykes was excluded from participation or denied the benefits of the services, programs, or activities of a public entity because of her own disability. If the federal court has jurisdiction to hear this case, and I think it's absurd to say that the federal court doesn't have jurisdiction to hear ADA complaints, then the question is whether any of those other things, those doctrines that the defendants put forward, bar my client. Well, there are two jurisdiction-stripping doctrines. One of them is Rooker. The other is the potential issue of a combination of mootness and sovereign immunity because the injunctive and declaratory claims are arguably moot because the mother has passed away and so it's not clear if there's anything left. And the damages claim, I know it's a Title II case, not a Title I case, but if you're trying to get money damages against the state, you at least have an issue about whether that's something that you can do. The problem with damages, judges, I don't think we ever got to that or my client ever got to that. I understand that my client was a pro se litigant, and this complaint, I have to acknowledge, is a bit of a mess. But when you file your appearance in a train wreck, it takes a little while to get the train back on the tracks. And what we're asking here, judges, for you to reverse and allow the complaint to be amended and understand that the logic that the district court used in applying all of these doctrines was based not on my client. It was based on the fact that my client's mother, and I don't represent my client's mother, and all of those doctrines do, I would argue, do apply if this case was brought seeking relief for my client's mother. But we're not doing that. We're not asking this court to give relief to my client's mother. The relief we're asking is specific to my client. I'd save the rest of my time. All right. That's fine. So, Ms. Welsh, I think you're first. Yes, Your Honor. Good morning. May it please the Court, I'm Mary Welsh. I'm here on behalf of the state defendants. As you know, I'm splitting the time with Mr. Mena, who is representing the private defendants, and he will be speaking about the issues unique to them, such as the inoperative supplemental complaint and the defenses unique to his particular defendants. As the Court indicates, there is a Rooker-Feldman jurisdictional problem with the plaintiff's, Ms. Sykes' claims here, separate and apart from the claims that she was trying to bring on behalf of her mother. The central focus of Rooker-Feldman is that only the Supreme Court, under Section 1257, has the power, the jurisdiction, to review state court judgments. But she's a non-party, and the Supreme Court's ExxonMobil, Saudi Basic Industries case, really does seem to be an effort on the part of the Court to rein in Rooker-Feldman and say, stop using it with these things. So we need a final judgment, and we need a state court loser who's a party. How does she satisfy those two criteria? Well, it's, I mean, this Court held, you know, some time ago, that even before Exxon, that non-parties, as long as you're adjudicating the rights of the non-party, which certainly happened here when, you know, when the Circuit Court issued the order expelling Ms. Sykes and her dog from the courtroom and striking her request for certain kinds of relief. So your view is she should have taken an appeal to the Illinois Appellate Court and said, this is in violation of my rights under both federal and Illinois law. Yes, absolutely, Your Honor. I mean, this is precisely what Rooker-Feldman is designed to do. It's designed to stop people who have an order that has, well, an order like this one, which told her that she couldn't do something. I mean, she wanted to insert herself into this case. You know, she's sort of like the parties who wanted to intervene in Ludd-Holtz, in this Court's case in Ludd-Holtz. And so they weren't actually parties, and she wasn't a party to the guardianship case, but she wanted to insert herself into it. And once she was trying to do that, then this order came down, which, and she's never said, well, I can't appeal this, I can't go under Rule 307, which is for preliminary injunctions. I couldn't have filed a motion for a supervisory order, an original action. I couldn't have filed an original action for mandamus. Again, the whole point of Rooker-Feldman is that only the United States Supreme Court, no matter how erroneous a state court order is, or unconstitutional or violative in some other way of federal law, only the United States Supreme Court has jurisdiction to review that order. So can I ask you this question? I mean, that's a very well-established proposition, obviously. But I thought I understood Mr. Barchetto, just as he was sitting down, to say that this case actually isn't linked in particular anymore with this longstanding dispute that was going on about the mother. Is that your understanding, or is this really just a side issue? It's news to me, Your Honor. It's news to me. I mean, I had no idea that she had any sort of regular reason to go to the circuit court of Cook County. I mean, we don't know that from the complaint. And so, I mean, that's a case for another day, I guess. But in terms of this case, really what she's complaining about, other than the claims related to her mother, is that she was ousted from this courtroom by the judge. And again, that's, as this court said in Gary, one of the sort of hallmarks of a Rooker-Feldman case is when you're suing the judge, a state court judge. And that's exactly what happened here. So are you arguing that a person with a disability only has standing to bring an ADA claim regarding access to a public courtroom if they have a case pending? Standing? Yes. Or that they can actually bring the claim in the federal court? So could you have a straight-up ADA complaint complaining about not having access to a state court without having a case pending before the state court? In other words, you come in, I guess you'd have to have some role like being a witness or have some other interest, or you could be a reporter or something like that. Yeah, I think you'd have to show an injury in fact. I mean, that's Tennessee v. Lane. But what if you're one of the court buffs? I mean, you just like sitting in the circuit court of Cook County, maybe like Judge McCarthy, or don't like Judge McCarthy or whatever. Surely there's a principle under Illinois law, as well as the law of other states, that courts are public institutions and the public has a right to be there. I would imagine that if you went to the Daly Center and if somehow you weren't allowed, you know, you asked for a reasonable modification and you weren't granted it, then you could bring an ADA claim. You know, you would have suffered an injury related to the ADA. Well, like Tennessee v. Lane, basically. Yes, exactly, precisely. I mean, he was a party. So what's the difference between this case, which, I mean, how do you distinguish it if you have the right to bring a case, an ADA case, because you were prevented from going into the circuit court of Cook County because you had your service dog. If you can bring that ADA claim, why can't you bring this ADA claim? Because this one is not separate from the order that Judge McCarthy issued. But the order he issued didn't have anything to do, I mean, as it related to the mother. No, the order that she issued, the order that Judge McCarthy issued was banning Ms. Sykes, right, and denying her. In her mother's case. In her mother's case, and denying her the, you know, dismissing her petition, which was asking for ADA relief, and she alleges that that was in retaliation for her ADA claim. So your distinction would be if it was a case pending and someone was barred, then that's distinguishable from just someone generally being barred from the courtroom. Yes. In terms of the right to file an ADA claim. Yes, I mean, I think that that's true. I haven't really thought that through. But, yes, I mean, that seems to be. I mean, here, again, the question is, do you have an injury that's, I mean, Rooker-Feldman, the central question for Rooker-Feldman is, do you have an injury that's separable from a court order, since there can't be review of state court orders? And here the injury is the state court order. And so because it barred her and the dog from the courthouse and it retaliated against her, this is her allegation, for having raised ADA issues in the guardianship case. So because of that, you know, because her claims are not separable in any way from the court order here, Judge McCarthy's court order, Rooker-Feldman requires that this court find that there's, as the district court did, that there's no jurisdiction to decide this particular ADA claim. If we thought there was jurisdiction, do you think she could seek damages for Judge McCarthy's actions? I'm not sure, actually. I know that in some instances the state has waived its sovereign immunity to ADA claims, and so I actually hadn't reached the merits. I wanted to focus on the jurisdictional question. Okay, no, that's fair enough. Right. Unless the court has other questions about younger or – So attacking the legality of the court's order to leave the courtroom is not disrupting the state court's judgment in the probate proceeding, is it? Or your answer would be it is? It's disrupt – wait, maybe could you rephrase your question? So what I'm saying is attacking the legality of the court's order to leave the courtroom is not disrupting the state court's judgment in the probate proceeding, is it? I mean, how does it disrupt the state court's judgment? In other words, it's collateral, isn't it? It's collateral dispute. Right, and this is a separate order. It would be – it's not an order within the – it's an order that would be separately appealable, as we explained, and so it's not the final judgment in the – but it doesn't have to be a final judgment for Rupert Feldman to apply. It just has to be an appealable order. If there are no more questions, thank you. All right, thank you. Mr. Minna. If it pleases the court, I'm here to address any issues with respect to what would happen should this court find that there was jurisdiction in the district court with respect to my client, Carolyn Torp, and in the supplemental complaint with respect to her and Peter Schmidl and the official in Cannes. It is very clear that with respect to the original complaint that a guardian ad litem appointed by a court is not an agent. There's only one case which addresses that. That's the Scheibe case out of the 11th Circuit. Very unequivocal. Mr. Marchetto cites one case which talks about a court-appointed disability coordinator, someone who's a court employee. A GAL is not a court employee, is not employed by the court, has no power to do anything. If someone complained to Ms. Torp in her role as GAL, well, gee, I can't have access to the court. She'd go, what do you want me to do? I'm a GAL. All I have to do, I have powers to take care of my mother's person in the state. So are you also arguing that the case against her is moot? What's the status of any dispute? Is there a dispute between Ms. Sykes and the estate? The guardianship is over. The guardianship is, of course, over. Right, and so to the extent that it's moot, we joined in the state's argument. And, yes, we do agree with respect to any dispute in the guardianship, that's moot, that's over. With respect to any issue in the now decedent's estate, that's not before this court, and it's irrelevant. With respect to the supplemental complaint, it was not filed properly. There's never been any showing, any argument as to how it could properly have been filed. Additionally, as shown in the documents we filed in the motion dismissed below, the order that was complained of was filed prior to the time that Peter Schmidl and Fishel Kahn entered their appearance as the attorneys for Carroll and Torp. How they violated the Fair Housing Act when they weren't the attorneys at issue has never been stated. Carroll and Torp is never alleged to have done anything except other in a generalized way for which we have no idea. I urge this court to affirm the district court's order. Thank you. All right. Thank you very much. Anything further, Mr. Varchetto? I would direct this court's attention to Charles and Riley v. the Board of Commissioners of Tippecanoe County. It's a United States District Court case in Northern District of Indiana. It hasn't, I think, officially been reported. It was decided on January 6, 2016, and the slip copy to simply cite is 2016 WL 907770. It's interesting because in that case, the facts are almost identical except that what happened there is the sheriff didn't allow a person with PTSD to enter the courthouse with his service dog. In that case, the federal court said that they didn't even question jurisdiction. There was no question that the federal court had jurisdiction over that claim. I don't see how that's distinguished from what I'm saying. But it's also interesting that in that claim, they held that he had stated a claim. It helps me because in that claim, additionally, they said that if you state a claim for ADA, that you've also stated a claim for RA, which we are claiming. Well, that's true. I mean, that's well established. But I guess the problem for us is that it's very hard to get away from the fact that the source of the order assessing whether the dog was going to be in the courtroom or not was the state court judge in the middle of handling the state court case. And how one gets to a separate federal claim filed on that basis is arguably different from a federal claim based on maybe a courthouse-wide policy that no dogs come in or failure to have accessible restrooms or any number of other cases, which are certainly going to be fine under the ADA. But when you start micromanaging the state court judge's handling of a proceeding in front of her and you say the federal court's going to parachute in as opposed to taking an appeal through the state system, that's when you run into trouble. Again, my client was a pro se litigant. We're not asking this court. We're very clear about it because we are not asking this court to overrule any order. If she was going to file an appeal, she would have been asking the Illinois courts to overrule or to change some order that was entered in the circuit court. But you surely are asking her to change the order of Judge McCarthy so that the dog, the service dog, can sit there in the courtroom while she attends court, right? I mean, I don't know what you're asking for if not that. Yes, but it's the actual inquiry that is the violation of the American with Disabilities Act. It's not the order. That's a strong position because just because somebody says, you know, I happen to love my cats, and if I said, you know, I want my cats here on the bench with me, maybe somebody could say, do you really need them or not? There could be a brief inquiry. I can't believe that the inquiry itself is something you think is prohibited. First of all, the way the inquiry was done is what is a violation. So maybe she was rude. Well, you haven't seen the transcripts and you haven't seen the affidavits of the witnesses, but in order for – let me go back. All right, so you need to just sum up actually what you need to do. All right. We're asking this court to reverse and return this case to the district court and allow my client to amend the complaint. My client's a pro se litigant, notice pleading. We didn't even get to 12B6. She should be allowed to amend that complaint and ferret out these claims because it really never was. And she's a pro se litigant and at the very least she should have been allowed one shot at the – one bite of the apple and she wasn't. And that's really what I'm saying. She didn't have a lawyer. I think if I were able to rewrite this complaint, I could perhaps set out in a better way what she's saying. And what I want to stress is what she's saying is that all those other claims are gone. Thank you, Judge. Thank you. Thank you. Thanks to both counsel. We'll take – or all counsel will take the case under advisement.